UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| VANIR CONSTRUCTION MANAGEMENT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ORMOND BUILDERS, INC., an Idaho corporation,<br><br>Defendant. | Case No. 4:25-cv-00220-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court is Plaintiff Vanir Construction Management, Inc.'s Motion for Attorney Fees and Costs (Dkt. 28). Vanir seeks to hold counsel for Defendant Ormond Builders, Inc. ("Ormond") personally liable under 28 U.S.C. § 1927 for fees incurred while Ormond pursued arbitration before the American Arbitration Association ("AAA") and simultaneously sought to compel arbitration in this Court. Vanir initially requested $59,412.50 and reduced its request to $49,415.35 in reply (Dkt. 28 at 2; Dkt. 30 at 9–10). Having reviewed the record and the parties' submissions, the Court finds oral argument would not significantly aid its decision-making process and decides the motion on the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(e)(1)(B); Fed. R. Civ. P. 78(b). For the reasons discussed below, the Court denies the motion.

## I. BACKGROUND

Vanir commenced this action on April 21, 2025, seeking contractual indemnification from Ormond and Big-D Construction Corp. for fees and costs incurred defending litigation brought by the Shoshone-Bannock Tribes (Dkt. 1). Vanir asserts rights as an intended third-party

beneficiary of indemnification provisions in the Tribes' construction contracts with those entities (*id.* ¶¶ 32–40). Big-D was subsequently dismissed from this action (Dkt. 21).

In May 2025, Ormond and Big-D submitted a demand for AAA arbitration seeking a declaration that neither owed indemnification to Vanir (Dkt. 28-5). The next day, Ormond moved to compel arbitration and stay this action or, alternatively, dismiss the complaint (Dkt. 9). Big-D joined the motion (Dkt. 12). Vanir opposed it (Dkt. 17), and Ormond replied (Dkt. 18). On June 12, Vanir objected to the AAA proceeding, maintaining that it had not agreed to arbitrate and requesting dismissal of the arbitration (Dkt. 28-6).

On July 11, 2025, the AAA determined that the demand satisfied its administrative filing requirements. The AAA acknowledged Vanir's objection to arbitrability and the pending federal motion, but did not purport to decide whether Vanir had agreed to arbitrate; instead, it stated that it would abide by an order of this Court (Dkt. 29-1 at 6–7). The AAA proceeding continued, including arbitrator selection and preliminary scheduling. In November 2025, Ormond served fifty-nine requests for admission and twenty-five requests for production in the arbitration, which Vanir challenged (Dkt. 28-1 at 5–6).

On December 3, 2025, Vanir expressly requested that the AAA stay its proceedings pending this Court's determination of arbitrability (Dkt. 28-1 at 5). At a conference the next day, the panel treated Vanir's objection and stay request as a motion to dismiss or stay, and the parties agreed to a briefing schedule (Dkt. 28-14 at 2–3). Ormond filed its response on December 31. Although it opposed dismissal, Ormond repeatedly agreed that a stay was appropriate while this Court decided whether Vanir was bound by an arbitration agreement (Dkt. 28-15 at 3, 10–11, 17).

The parties also informed this Court of the parallel proceeding through status reports (Dkts. 22, 23). On January 14, 2026, chambers personnel asked whether Ormond would file a statement in this case confirming its agreement that this Court should resolve arbitrability first (Dkt. 28-17 at 4). Ormond did not file such a statement and maintained that Vanir should submit its scheduled AAA reply (*id.* at 4). Counsel later represented that Ormond had "promptly requested" a stay from the AAA panel (*id.* at 2). Vanir submitted its reply on January 16, and the AAA panel stayed the arbitration by agreement on January 29 (Dkt. 29-1 at 34).

On February 18, 2026, the Court denied Ormond's motion to compel arbitration (Dkt. 25). The Court held that the arbitration provisions applied to disputes "between the parties" and did not bind Vanir, a nonsignatory. The Court rejected Ormond's reliance on *Clearwater REI, LLC v. Boling*, 318 P.3d 944 (Idaho 2014), and applied *Rath v. Managed Health Network, Inc.*, 844 P.2d 12 (Idaho 1992); *Lewis v. CEDU Educational Services, Inc.*, 15 P.3d 1147 (Idaho 2000); and *Peregrine Falcon LLC v. Piaggio America, Inc.*, No. 1:15-cv-00568-BLW, 2016 WL 4492811, at *8–9 (D. Idaho Aug. 24, 2016), *aff'd*, 720 F. App'x 863 (9th Cir. 2018) (Dkt. 25 at 5–7). Ormond thereafter asked the AAA to dismiss the arbitration in accordance with the Court's decision (Dkt. 29-1 at 13).

## II. LEGAL STANDARD

Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. The statute targets unreasonable and vexatious multiplication of proceedings, rather than every unsuccessful or poorly supported litigation position. *In re Keegan Management*

*Co. Securities Litigation*, 78 F.3d 431, 435–37 (9th Cir. 1996). It applies to "unnecessary filings and tactics once a lawsuit has begun," and its sanctions authority is an extraordinary remedy to be exercised with caution. *Id.* at 435, 437.

Section 1927 sanctions must be supported by a finding of subjective bad faith. *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015). Bad faith is present when an attorney "knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." *Id.* (citation omitted); *Keegan*, 78 F.3d at 436. The Ninth Circuit has also stated that "recklessness suffices for § 1927." *Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001). These formulations do not mean that an unsuccessful argument, without more, justifies sanctions. A recklessly advanced argument may satisfy the *Keegan* standard when it is frivolous, while a nonfrivolous argument may support sanctions if pursued to harass. *Keegan*, 78 F.3d at 436.

In *B.K.B. v. Maui Police Department*, 276 F.3d 1091, 1107 & n.8 (9th Cir. 2002), the Ninth Circuit upheld sanctions where counsel acted recklessly with knowledge of an applicable evidentiary rule and prior rulings, and the challenged position was frivolous. Likewise, in *Franco v. Dow Chemical Co. (In re Girardi)*, 611 F.3d 1027, 1061–64 (9th Cir. 2010), sanctions rested on recklessly frivolous filings and material misrepresentations to the court. *Girardi* also recognized an obligation to correct or withdraw litigation positions after they become obviously meritless. *Id.* at 1064. Those decisions do not dispense with the statutory requirement that counsel unreasonably and vexatiously multiply proceedings. *See also Johnson v. Greene*, No. 1:24-cv-00316-AKB, 2026 WL 1537433, at *1–2 (D. Idaho June 1, 2026) (declining § 1927 sanctions for an unsuccessful summary judgment motion absent the requisite misconduct).

Finally, the statute authorizes only the "excess costs, expenses, and attorneys' fees reasonably incurred because of" sanctionable multiplication. 28 U.S.C. § 1927. Whether such fees are recoverable depends on the conduct that caused them; the statute is not a general prevailing-party fee provision. *See Blixseth*, 796 F.3d at 1007-09.

## III. ANALYSIS

Vanir contends that Ormond's attorneys knowingly pursued arbitration despite controlling Idaho law, imposed duplicative litigation expenses, served improper discovery, resisted a stay, and misled this Court and the AAA concerning a stay request (Dkt. 28-1 at 8–11; Dkt. 30 at 4–8). Ormond denies acting recklessly or in bad faith and maintains that it sought a legitimate judicial determination of arbitrability (Dkt. 29 at 7–16).

The Court concludes that the record does not establish misconduct warranting sanctions under § 1927. That determination does not depend on a categorical rule excluding fees incurred in arbitration, and it does not alter the Court's prior ruling that Vanir cannot be compelled to arbitrate.

### A. Ormond's Arbitrability Position Does Not Establish Sanctionable Bad Faith

The authorities opposing Ormond's position were substantial. The arbitration provisions expressly applied to disputes "between the parties," and *Rath* and *Lewis* made clear that such language does not bind a nonsignatory merely because the nonsignatory benefits from another contractual provision. *Peregrine Falcon*, decided after *Clearwater*, applied that principle to a third-party beneficiary and similarly worded arbitration clause. 2016 WL 4492811, at *8–9. The Court rejected Ormond's interpretation for those reasons (Dkt. 25 at 5–7).

Nevertheless, the weakness of Ormond's position does not itself establish subjective bad faith. Ormond relied on *Clearwater*'s discussion of a third-party beneficiary's obligation to

comply with provisions of a contract the beneficiary seeks to enforce. It distinguished that case on the ground that Vanir affirmatively sought indemnification under the construction contracts, whereas the nonsignatories in *Clearwater* did not seek to enforce the agreements (Dkt. 29 at 9–10). The Court found that distinction legally insufficient. But the fact that counsel pressed an ultimately unsuccessful application of *Clearwater* does not, on this record, establish that counsel knowingly or recklessly advanced a frivolous position or sought to harass Vanir.

Vanir emphasizes that counsel persisted after Vanir cited *Lewis* and challenged the arbitration in both forums. That notice increases the force of Vanir's argument, and the Court does not suggest that an attorney may persist indefinitely in a position once its lack of merit becomes obvious. *See Girardi*, 611 F.3d at 1064. Here, however, counsel presented their interpretation to this Court through an initial motion and reply, and ultimately complied with the Court's adverse ruling. The record supports a finding that Ormond's construction of the arbitration clause was incorrect; it does not support a finding that counsel's continued advocacy crossed the line into knowing or reckless frivolousness or harassment within the meaning of § 1927.

**B. The Parallel Proceedings Do Not Independently Establish Vexatious Multiplication**

Vanir argues that Ormond should have awaited a ruling on its motion to compel before initiating and pursuing the AAA proceeding. The Federal Arbitration Act provides for a judicial determination when a party seeks to compel another to arbitrate. 9 U.S.C. § 4. But Vanir identifies no statute, rule, or existing court order requiring Ormond to obtain leave of this Court before submitting its arbitration demand. Although a nonsignatory cannot be compelled to arbitrate without an agreement, the pendency of a motion to compel does not by itself establish that contemporaneous AAA proceedings are sanctionable under § 1927.

The AAA's acceptance of the demand did not resolve the underlying question of consent. The AAA stated only that its administrative filing requirements had been met, acknowledged the pending judicial dispute, and agreed to comply with the Court's decision (Dkt. 29-1 at 6–7). Nor does the existence of two forums, and the expenses that accompany them, prove that counsel pursued the arbitration for the purpose of imposing costs on Vanir. Ormond invoked the judicial procedure for resolving arbitrability, did not violate an order staying arbitration, and asked the AAA to dismiss the proceeding after the Court denied its motion to compel (Dkt. 9; Dkt. 29-1 at 13).

The Court also notes that Vanir did not seek affirmative relief from this Court to stay the arbitration when Ormond moved to compel arbitration in May 2025. Although Vanir knew Ormond had initiated proceedings before the AAA, its opposition requested only that the Court deny Ormond's motion, including Ormond's request to stay this litigation (Dkt. 17 at 8–9). Vanir did not cross-move to stay the arbitration pending this Court's determination of arbitrability; it challenged arbitrability before the AAA in June 2025 and did not request a stay from the arbitration panel until December 2025 (Dkt. 28-1 at 4–5). To be sure, Vanir was entitled to contest arbitrability, and its failure to seek a stay from this Court does not excuse otherwise sanctionable conduct by Ormond's counsel. Nevertheless, Vanir's decision not to request judicial intervention at the outset is relevant to whether the resulting attorney fees were due to an unreasonable and vexatious multiplication of proceedings. The existence of parallel proceedings, without more, does not establish the recklessness or bad faith necessary to impose sanctions under § 1927.

The Court does not hold that counsel's conduct in a separate proceeding can never support § 1927 sanctions or that fees incurred in arbitration are categorically unrecoverable. But

they are unrecoverable in this instance. Vanir relies on *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *Valle v. Lowe's HIW, Inc.*, 2011 WL 3667441, at *7 (N.D. Cal. Aug. 22, 2011); and *Legair v. Circuit City Stores, Inc.*, 2006 WL 278405, at *1–3 (S.D. Ohio Feb. 3, 2006). *Chambers* concerned inherent sanctions authority; *Valle* upheld a contractual arbitration fee-shifting provision against an unconscionability challenge and cited § 1927 only by loose analogy; and *Legair* awarded § 1927 sanctions for federal-court expenses following counsel's obstruction of court-ordered arbitration. Likewise, *LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899, 904–06 (D.C. Cir. 1998), affirmed § 1927 sanctions for collateral state-court conduct that undermined an existing federal order allowing arbitration. These authorities recognize that arbitration-related misconduct may have sanctions consequences. They do not establish that pursuing arbitration while an initial arbitrability motion is pending, without the additional misconduct present in those cases, constitutes unreasonable and vexatious multiplication.

Assuming, without deciding, that fees incurred in an arbitration may be recoverable under § 1927 when counsel's conduct otherwise satisfies the statute, the difficulty with Vanir's request is not simply where Vanir incurred the fees. Vanir also has not established the requisite sanctionable conduct.

**C. The Discovery Dispute and Stay Correspondence Are Not Sanctionable Conduct**

Vanir points to Ormond's requests for admission and production as evidence that counsel attempted to obtain federal-court discovery in arbitration despite the AAA's streamlined procedures (Dkt. 28-1 at 5–6; Dkt. 30 at 5–6). The breadth and timing of those requests were reasonably disputed, particularly while Vanir's objection to arbitrability remained unresolved. Yet the parties disagree over the discovery permitted by the applicable AAA rules, and the record does not identify an arbitral ruling finding those requests unauthorized. The Court cannot

infer from the service of disputed requests alone that counsel knowingly engaged in abusive discovery or acted to harass Vanir.

The stay dispute presents a closer question. Vanir objected to the AAA's jurisdiction in June 2025 and requested dismissal, but did not expressly request a stay in the arbitration until December 3 of that year (Dkts. 28-6, 28-10). Then, at a December 4 arbitration conference, Ormond requested an opportunity to respond to Vanir's combined request for dismissal or a stay, and the panel set a briefing schedule (Dkt. 28-14 at 2–3). Ormond's December 31 response opposed dismissal but repeatedly agreed that the AAA proceeding should be stayed pending this Court's ruling (Dkt. 28-15 at 3, 10–11, 17).

Vanir correctly observes that Ormond did not highlight that agreement in a separate stay request or in the email transmitting its brief. Moreover, when chambers asked whether Ormond would file a stipulation or statement in the federal action, Ormond declined and maintained that Vanir should file its scheduled arbitration reply (Dkt. 28-17 at 4–5). Counsel could have communicated their agreement more directly and promptly. But Ormond had opposed dismissal of the arbitration even while it agreed to a stay before the AAA in a filed brief. The record does not demonstrate that the resulting briefing was pursued in knowing or reckless disregard of a frivolous position, rather than as part of the parties' dispute over dismissal and preservation of their respective rights.

Vanir also characterizes counsel's January 14 representation that Ormond had "promptly requested" a stay as a misrepresentation to this Court (Dkt. 28-17 at 2). The statement overstated the clarity of Ormond's communication with the AAA: Ormond had not submitted a separate, direct stay request. Nevertheless, Ormond expressly requested a stay in its December 31 brief, which it filed under the briefing schedule Vanir agreed to (Dkt. 28-15 at 3, 10–11, 17).

Considered in context, the record does not establish that counsel knowingly or recklessly misrepresented a material fact to the Court, as occurred in *Girardi*. The AAA stayed its proceeding by agreement on January 29 (Dkt. 29-1 at 34).

Finally, the record does not establish unreasonable and vexatious multiplication of the federal proceedings. The motion to compel was presented through one motion, opposition, and reply (Dkts. 9, 17, 18). The parties later filed limited status reports (Dkts. 22–24), and Ormond did not seek reconsideration of the Court's ruling (Dkt. 25). A single, post-complaint motion may, in an appropriate case, support sanctions, but the Court has not found that Ormond's motion was knowingly or recklessly frivolous, and the ensuing litigation did not independently demonstrate a vexatious effort to multiply federal proceedings.

### D. Fees

Vanir incurred actual expense responding to the AAA proceeding, including arbitrator selection, objections to arbitrability, discovery, and briefing regarding a stay or dismissal. Its revised request also includes time associated with the federal case (Dkts. 28-3, 30-1). The Court does not decide whether each category of expense could be compensable under § 1927 in an otherwise sanctionable case. Because Vanir has not established conduct meeting the statutory standard, the Court need not determine whether the requested hours and rates are reasonable or which expenses would have been incurred but for any particular act.

## IV. ORDER

**IT IS ORDERED** that Plaintiff Vanir Construction Management, Inc.'s Motion for Attorney Fees and Costs (Dkt. 28) is **DENIED**.

DATED: November 24, 2026

Amanda K. Brailsford
U.S. District Court Judge